UNITED STATES DISTRICT COURT
EASTERN DISTRICE OF MICHIGAN
SOUTHERN DIVISION

MS RENTALS, LLC, and GARNER
PROPERTIES & MANAGEMENT, LLC,        Case Number 18-10165
                                     Honorable David M. Lawson

            Plaintiffs,

v.

CITY OF DETROIT,

            Defendant.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING PLAINITFFS PARTIAL SUMMARY JUDGMENT UNDER Fed. R. Civ. P. 56(f)(1), DISMISSING CERTAIN COUNTS OF THE COMPLAINT WITH PREJUDICE, AND DISMISSING MOTION FOR CLASS CERTIFICATION AS MOOT

The City of Detroit, like many municipalities, has a Property Maintenance Code (PMC) that includes provisions regulating landlords and the rentals of residential housing units.  Detroit's ordinance requires property owners to register their property, comply with habitability standards, and submit to inspections.  The City charges fees for occupancy certificates and inspections, and imposes fines when inspections are refused.  The plaintiffs brought the putative class action alleging that Detroit's PMC is unconstitutional because the version of the PMC in effect when the case was filed authorizes rental property inspections without a warrant or an opportunity for precompliance review.  Asserting various legal theories, the plaintiffs ask the Court to void the PMC and order the City to return all fees and fines collected under it.

The City has moved for summary judgment.  It has amended its ordinance to include a process allowing landlords to refuse a demand for inspection and mount an administrative challenge before fines or fees are assessed.  Believing that the amendment cures any constitutional

violation, the City asserts that the case is now moot. Remarkably, though, the City asserts that if the Court finds the old ordinance valid, it will revert to that version. The City also argues that the plaintiffs' other theories do not support their claim for any relief, including damages.

The Court heard oral argument from the parties on December 19, 2018. The case is not moot because the City's voluntary cessation of unconstitutional conduct does not eliminate the controversy, especially in light of its avowed intention to revert to that conduct. The involuntary inspection provision absent precompliance review violates the Fourth Amendment, and therefore the old ordinance is invalid on its face. But the plaintiffs have not offered evidence that establishes a right to relief on any of their other legal theories, nor have they created a fact question on causation or damages because there is no record evidence that the City conducted any inspections over the objection of plaintiff landlords, or that the plaintiffs ever refused an inspection. Therefore, the Court will grant in part the City's motion for summary judgment and dismiss the claims for damages. Because the old ordinance is facially unconstitutional, the Court will deny the motion for summary judgment on that ground, grant judgment for the plaintiffs, and declare the inspection provision invalid.

## I. Facts and Proceedings

The plaintiffs own and manage single-family, rental properties in Detroit, Michigan that are subject to the City's PMC. These ordinances are derived from the International Property Maintenance Code, a widely used set of standards, and establish "the minimum legal requirements for the maintenance, inspection and reinspection of all buildings, premises, and structures within the city." Detroit PMC, ECF No. 14-5, PageID.155, 166. The PMC applies to all existing residential and nonresidential buildings, premises, and structures with an expressed intent to "ensure the public health, safety, and welfare insofar as they are affected by the continued

occupancy and maintenance" of properties in Detroit. *Id.*, PageID.166. The PMC imposes several requirements on owners or agents of rental properties in Detroit.

The parties estimate that there are at least 90,000 rental properties in the City. All dwellings must be registered with the City and owners must obtain a certificate of registration. PMC § 9-1-81, ECF No. 14-5, PageID.186. Once registered, rental properties are subject to inspection "as closely as possible to once a year." *Id.* § 9-1-82, ECF No. 14-5, PageID.187. Properties that pass inspection are issued a certificate of compliance. *Ibid.* It is unlawful for rental properties to be occupied without a certificate of compliance. *Ibid.* Terrance Martin, a supervisor of building inspectors at Detroit's Buildings, Safety Engineering & Environmental Department, testified that the City recently modified the frequency of inspection, which is now every two years once a certificate of compliance is obtained.

Although registration is free, inspections are accompanied by fees. *Id.* § 9-1-34, ECF No. 14-5, PageID.177. Owners of single-family rental properties are expected to pay $150 for any mandatory, initial inspection and $134 for a second reinspection. If a rental property does not pass an initial inspection, the first reinspection thereafter is free.

At times relevant to this lawsuit, the PMC authorized designated City officials, "subject to any constitutional restrictions on unreasonable searches and seizures, . . . to enter any building, premises, or structure within the city . . . at reasonable times to inspect" and to "pursue recourse" where entry is refused or not obtained. *Id.* § 9-1-35(b), ECF No. 14-5, PageID.178. According to Terrence Martin, there was no process in place (until recently) for obtaining a warrant if an owner or tenant refused entry. Martin testified that in the last four or five years, he could not recall a single instance when an inspector obtained a warrant to enter a residential rental.

Inspections to obtain compliance were conducted based on at least one of several triggering events, including the receipt of a complaint or other notice of a possible violation of the PMC, a request for inspection by the owner of a building, or the passage of approximately one year since the last inspection. If a rental property was found to be out of compliance, owners were issued "correction orders," which described the violations discovered during an inspection and directed owners to make the necessary repairs within a prescribed time. Owners were responsible for requesting reinspection once the violations had been corrected; the City scheduled the reinspections 31 or 35 days following initial inspection.

Rental owners who did not correct their code violations per a correction order were denied certificates of compliance, and, as a result, could not lawfully lease their properties. Occasionally, an inspector would issue a blight violation under the PMC when a unit remained occupied despite a certificate of compliance being withheld where a violation presented an immediate risk of harm or persisted even after a correction order was issued. PMC § 9-1-19, ECF No. 14-5, PageID.169; *id.* § 8-5-2-14, ECF No. 14-6, PageID.223. The first blight offense resulted in a fine of $250, increasing to $350 and $500 for the second and third offenses. *Id.* § 9-1-20, ECF No. 14-5, PageID.172. A blight violation ticket or citation could be issued for each day a rental property lacks a certificate of compliance. Martin testified that those tickets serve to "edge" owners into compliance when maintenance violations remain outstanding.

Issuance of a blight citation triggers an administrative proceeding that gives alleged violators an opportunity to challenge the citation. Under the PMC, a blight violation notice must contain a prescribed list of information, including a description of the violations alleged, the date and time of the administrative hearing, and the alleged violator's rights either to admit or deny responsibility. PMC § 8-5-2-12, ECF No. 14-6, PageID.222. Where an alleged violator admits

responsibility "with explanation" or denies responsibility altogether, he is required to appear at an administrative hearing to give testimony or offer evidence that is "relevant to the existence of a blight violation." *Id.* §§ 8-5-2-16, PageID.224; 8-5-3-22, PageID.228. However, if a violator fails to pay a blight citation after a hearings officer's determination or otherwise defaults, the City is authorized to obtain a lien against the property. *Id.* § 8-5-2-19, PageID.225. In order to obtain a certificate of compliance, an owner must receive "clearance" from the department of administrative hearings that there are no outstanding blight judgments against the owner for any of its properties.

The plaintiffs alleged in their complaint that on several occasions, inspections were performed at their rental properties of which they were unaware and did not consent. They have not backed that up with any evidence, however.

The record does show that plaintiff MS Rentals, a limited liability company located in Gibraltar, Michigan, owns the property located at 9224 Fielding, Detroit, Michigan ("Fielding"). On April 4, 2014, the defendant's buildings, safety, engineering, and environmental department received a complaint from a tenant at that property. Inspector Ramez Ibrahim testified that he responded to the complaint on April 9, but because the tenant was not home the inspection was postponed. Ibrahim testified that he has never entered a building without permission. On April 21, 2014, the City did perform an inspection of Fielding for which MS Rentals was charged a fee of $150. The City thereafter issued a correction order to MS Rentals, listing 11 violations of the PMC that included an emergency directive to provide and maintain a smoke detector. The order directed MS Rentals to correct the violations by May 21, 2014. The City asserts that MS Rentals never requested reinspection or made the necessary corrections. On June 12, 2014, the defendant issued two blight violation notices to MS Rentals for failure to comply with the emergency order

and to obtain a certificate of compliance. The notices imposed fines of $530 and $280, respectively. On July 31, 2014, an order of judgment in the amount of $280 was entered against MS Rentals for failure to obtain a certificate of compliance. The order indicates that the finding was based on MS Rentals's admission of responsibility.

Plaintiff Garner Properties & Management ("Garner"), a limited liability company located in Taylor, Michigan, manages the property located at 14920 Faust, Detroit, Michigan ("Faust"). Between 2008 and 2018, several inspections were performed at the Faust property, and Garner was issued a number of correction orders. On at least two occasions, Garner was charged inspection fees of $150. Following a series of inspections and correction orders in the Fall of 2015, the City issued Garner a blight violation notice on September 8, 2015 for failure to secure a certificate of compliance. The notice imposed a fine of $250. Most recently, an inspection was performed on October 26, 2017 after a complaint was lodged with the City. A correction order was issued on November 14 listing 26 violations of the PMC and giving Garner until December 14, 2018 to bring the property up to code. Another correction order was issued on January 17, 2018.

The plaintiffs assert that they refused to permit inspection and reinspection of their properties and were punished for doing so through the issuance of blight violations. However, the plaintiffs have not pointed to anything in the record that backs up those assertions. They did not produce affidavits of representatives or tenants attesting to instances of refusal, nor is there anything in the City's records that would show that the inspections were nonconsensual. The only evidence the plaintiffs produced are their respective blight violation notices, which indicate that the plaintiffs did not have the requisite certificate of compliance, but it is unclear what transpired before their issuance.

On January 15, 2018, the plaintiffs filed a seven-count complaint in this putative class action. They allege that the City violated all Detroit residential property owners' rights under the Fourteenth Amendment's Due Process Clause (Count I) and the Fourth Amendment (Count II) and raise a claim of assumpsit under state law (Count III). The complaint also includes claims for municipal liability (Count IV), injunctive and declaratory relief (Counts V and VI), and liability under 42 U.S.C. § 1983 (Count VII).

After discovery closed, the City moved for summary judgment on all counts. Its arguments are discussed in detail below. The plaintiffs filed a response in opposition. They also had filed a motion for class certification, which has not yet been addressed.

## II. Discussion

The City moved for summary judgment under Federal Rule of Civil Procedure 56(a). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627 (6th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "The moving party bears the burden of showing that no genuine issues of material fact exist," and it "must demonstrate the 'basis for its motion, and identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* at 627-28 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

To oppose that showing, "[t]he nonmoving party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 628 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "[T]he party opposing the summary judgment motion must do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v.*

*Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal quotation marks omitted)).  The opposing party must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.  The submitted materials need not themselves be in a form that is admissible in evidence.  *Celotex*, 477 U.S. at 324.

"The reviewing court must then determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Pittman*, 901 F.3d at 628 (quoting *Anderson*, 477 U.S. at 251-52).  In doing so, the Court must "view the facts and draw all reasonable inferences in favor of the non-moving party."  *Ibid.* (quoting *Matsushita*, 475 U.S. at 587).

On an issue where the material facts are mostly settled, and the question before the court is purely a legal one, as here with the alleged facial invalidity of certain sections of the PMC, the summary judgment procedure is well suited for resolution of the case.  *See Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir. 2009).

## A.  The Plaintiffs' Claims

Although the complaint is styled in seven counts, there are only two viable standalone causes of action: violation of the Fourth Amendment's prohibition against unreasonable searches; and deprivation of due process under the Fourteenth Amendment.  The remaining counts either address aspects of those claims brought under 42 U.S.C. § 1983 or the types of relief sought.

The parties agree that under Michigan law, there is no independent cause of action for the claim of assumpsit, *see Fisher Sand & Gravel Co. v. Neal A. Sweebe, Inc.*, 494 Mich. 543, 564, 837 N.W.2d 244, 256 (2013), so that claim (Count III) will be dismissed.  However,

"notwithstanding the abolition of assumpsit, the substantive remedies traditionally available under assumpsit were preserved." *Fisher Sand*, 494 Mich. at 564, 837 N.W.2d at 256-57. But the availability of those remedies depends on the plaintiffs' success on the substantive counts. Plaintiff's counsels' experience with other cloned cases in this Court should have taught that lesson. *See Garner Properties & Mgmt. v. Charter Twp. of Redford*, No. 15-14100, 2017 WL 3412080, at *17 (E.D. Mich. Aug. 8, 2017) (Goldsmith, J.) ("[T]he claim of assumpsit — insofar as Garner Properties pleaded it as an independent cause of action — is dismissed. To the extent Garner Properties prevails at trial, it may be entitled to remedies that were previously available under assumpsit."); *NILI 2011, LLC v. City of Warren*, No. 15-13392, 2017 WL 5467746, at *9 (E.D. Mich. Nov. 14, 2017) (Drain, J.) ("Plaintiffs cannot assert a claim based on assumpsit.").

Similarly, the claim styled as "Municipal Liability" (Count IV) does not allege a substantive cause of action. Instead, it states that the City's practices under its PMC constitute official policy, presumably to satisfy the requirements of *Monell v. New York City Department of Social Service*s, 436 U.S. 658, 691 (1978)). But the count does not state an independent claim for relief, especially since the City is the only defendant in the case.

Nor do the counts styled as "Injunctive Relief" (Count V) and "Declaratory Relief" (Count VI) state independent claims. Those are remedies dependent on the viability for the Fourth and Fourteenth Amendment claims.

Finally, the claim styled as "Violation of 42 U.S.C. § 1983" (Count VII) alleges only that the plaintiffs are entitled to relief for the previously-alleged constitutional violations. Under that statute, the plaintiff must show "(1) the deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under the color of state law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th

Cir. 2006)).  There is no dispute on the second element.  The plaintiffs say the first element is satisfied by the demonstrated unconstitutionality of the PMC provisions challenged in Counts I and II.  Count VII is merely a repetition of those counts.

## B.  Fourteenth Amendment Claim (Count I)

The plaintiffs allege in their complaint that "[t]he Fifth and Fourteenth Amendments to the U.S. Constitution make it unconstitutional to deprive a person of their property without due process of law and just compensation.  Plaintiffs have a protected property interest in renting property and earning income from doing so."  Compl. ¶¶ 44-45.  The City argues in its motion for summary judgment that no constitutional violation is shown because its ordinance provides sufficient pre- and post-deprivation procedures.  Although the existence of post-deprivation procedures in these circumstances will not salvage an otherwise unconstitutional deprivation of a protected interest, *see Mitchell through Mitchell v. Cmty. Mental Health of Cent. Michigan*, 243 F. Supp. 3d 822, 839 (E.D. Mich. 2017) (noting that post-deprivation procedures as a sole remedy are adequate only when the state's interference with a protected right results from the "random or unauthorized act" of a state actor, and not from "some established state procedure") (citations omitted), the City's response does not address the plaintiffs' legal theory of liability.

The due process theory that the plaintiffs state in their complaint is based on the idea that the City imposed unconstitutional conditions on the plaintiffs' right to engage in protected activity, that is, the right to own and rent their real property.  The unconstitutional condition, according to the plaintiffs, is the requirement to "surrender[] their right to be free from warrantless searches." Plfs.' Br. at 11 (ECF No. 16, Page.ID.292); *see also* Pl.s' Compl. ¶¶ 50-51.

The unconstitutional conditions doctrine is a check on the coercive power of government, and as such finds its origins as a species of substantive due process.  *See* Kathleen M. Sullivan,

*Unconstitutional Conditions*, 102 HARV. L. REV. 1413, 1415 & n.3 (1989). That doctrine holds that a government may not grant a benefit on the condition that the beneficiary surrender a constitutional right, even if the government may withhold the benefit altogether. *Amelkin v. McClure,* 330 F.3d 822, 827-28 (6th Cir. 2003); *see also Perry v. Sindermann,* 408 U.S. 593, 597 (1972) ("For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests . . . ."); *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 434 (6th Cir. 2005). The doctrine has been applied in eminent domain cases, *Koontz v. St. Johns River Water Management District*, 570 U.S. 595, 612 (2013); *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994), but also has been pressed into service in other types of cases as well, such as denials of tax exemptions, unemployment benefits, welfare payments, and denials of public employment, *Perry*, 408 U.S. at 597 (collecting cases).

The plaintiffs contend that this theory fits their case based on the premise that the City will not issue a certificate of compliance on rental properties unless a landlord surrenders his or her right to be free from warrantless searches. But the PMC does no such thing. There are no requirements that a landlord waive rights under the Fourth Amendment as a condition of obtaining a certificate of compliance. Certainly, the City requires rental properties to meet the Code's habitability standards, and the landlord must demonstrate compliance through an initial inspection. And there is nothing wrong with that. "[I]t is beyond all dispute that local municipalities are empowered to regulate land use in order to maintain or improve the quality of life within their communities." *15192 Thirteen Mile Road, Inc. v. City of Warren*, 626 F. Supp. 803, 823 (E.D.

Mich. 1985) (Harvey, J.) (citations omitted). The plaintiffs sensibly do not contest the City's power to institute blight violations where a rental property is operating without a certificate of compliance. The underlying requirements that rental properties possess certificates of compliance and failure to do so may result in a blight violation are lawful, as is the requirement that landlords demonstrate compliance before being allowed to rent the property to tenants.

The plaintiffs criticize the code enforcement mechanisms that include an unfettered right for City officials to inspect premises to address complaints or ensure continuing compliance without a warrant, and that refusal to allow such inspections will jeopardize a previously-issued certificate of compliance. The specific provision that draws their fire previously authorized designated City officials, "subject to any constitutional restrictions on unreasonable searches and seizures, . . . to enter any building, premises, or structure within the city . . . at reasonable times to inspect." PMC § 9-1-35(b). As the Sixth Circuit recently explained, however, that argument is nothing more than "a run-of-the-mine exercise of the city's police power . . . [turning on] whether the property owners have a cognizable Fourth Amendment right to resist warrantless searches premised on a finding that their properties have become dangerous." *Benjamin as Tr. of Rebekah C. Benjamin Tr. v. Stemple*, --- F.3d ---, No. 18-1736, 2019 WL 545129, at *1-2 (6th Cir. Feb. 12, 2019). The argument is more properly addressed in their Fourth Amendment claim, not as a substantive due process argument.

And for that reason, the plaintiffs' claims in Count I cannot be sustained. Substantive due process protects only against state action that is not otherwise proscribed by the plain text of other constitutional amendments. *See Ciminillo v. Streicher*, 434 F.3d 461, 465 (6th Cir. 2006) (reasoning that "[a]lleged conduct that does not implicate a constitutional right protected by another amendment will be analyzed under the substantive due process component of the

Fourteenth Amendment"). Where a plaintiff has recourse to an "explicit textual source of constitutional protection," *Graham v. Connor*, 490 U.S. 386, 395 (1989), a more general claim of substantive due process is not available, *see County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). On to the Fourth Amendment claim.

## C. Fourth Amendment Claim

In *City of Los Angeles, California v. Patel*, --- U.S. ---, 135 S. Ct. 2443, 2452 (2015), the Supreme Court held that "absent consent, exigent circumstances, or the like, in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." Relying heavily on *Patel*, the plaintiffs argue that the City's inspection ordinances are unconstitutional on their face and as applied, as repugnant to the Fourth Amendment. The City contends that the plaintiffs' Fourth Amendment claim in Count II should be dismissed because the later amendment to the ordinance moots the claim, the refusal to allow warrantless inspections will not subject landlords to criminal penalties (as did the ordinance in *Patel*), and the old ordinance's enforcement mechanism that included warrantless searches is permitted because the rental housing business is a heavily regulated industry.

### 1. Mootness

The City contends that the plaintiffs' requests for declaratory and injunctive relief are moot because the City has amended its inspection ordinance to include an opportunity to seek precompliance review. On January 16, 2018 (the day after this case was filed), David Bell, director of Detroit's Buildings, Safety Engineering & Environmental Department, circulated a memorandum to all property maintenance staff citing *Patel* and informing them of modified inspection procedures. On June 12, 2018, the Detroit City Council approved amendments to

sections 9-1-35(b) and 9-1-82(a) of the PMC.  Section 9-1-35(b), which previously authorized designated City officials, "subject to any constitutional restrictions on unreasonable searches and seizures, . . . to enter any building, premises, or structure within the city . . . at reasonable times to inspect," now states:

> The director of the Buildings, Safety Engineering and Environmental Department and the public health director, or their authorized local officials or designees, are authorized to enter any building, premises, or structure within the City . . . at reasonable times to inspect.  (1) If an owner refuses to allow an inspection, the inspector shall provide a Notice of Pre-Inspection Rights which shall include information that the owner is entitled to a pre-compliance review of the inspection by a neutral hearing officer at the Detroit Department of Appeals and Hearings to determine the purpose, scope, and propriety of the inspection[.]

*Ibid*.  The Notice of Pre-Inspection Rights must be posted at the property and sent by regular U.S. mail to the owner's address of record.  Section 9-1-35(b)(1)(i), (ii).

To obtain precompliance review of the purpose, scope, and propriety of the inspection, owners must provide a request in writing to the hearing officer within 14 days of receipt of the Notice, stating "all the reasons why the inspection should not take place."  Section 9-1-35(b)(2)(i) [*This provision appears to be improperly numbered in the publication provided to the Court*.].  Upon the hearing officer's receipt of the request, the City must provide the hearing officer with a written explanation of the "purpose, scope, propriety, and any other reasons for conducting the inspection."  Section 9-1-35(b)(2)(iii).  Within 10 days of receiving the explanation from the City, the hearing officer must issue a written determination as to whether the inspection may proceed, and if so, describe the scope, area to be inspected, and any restrictions.  Section 9-1-35(b)(2)(iv).  Failure by the landlord to submit a request constitutes a waiver of the right to precompliance review of the inspection.  Section 9-1-35(b)(2)(ii).  If a request is not submitted timely or the owner, property manager, or occupant refuses entry even after a hearing officer's determination, the City is authorized to issue a blight violation; the City may also obtain an administrative warrant for

-14-

entry. Section 9-1-35(b)(2)(vii). These new procedures do not apply in emergency situations or where the property conditions constitute "an imminent threat to the public interest, safety, or welfare." Section 9-1-35(b)(3).

The defendant believes that the amendments correct the alleged constitutional deficiencies in the PMC, so there is no need for the Court to intercede. But "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.(TOC), Inc.*, 528 U.S. 167, 190 (2000) (citing *United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203 (1968)). "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Id.* at 189 (internal quotations omitted). If that were the case, the defendant would be free to resume his wrongful conduct. *Ibid.* (citations omitted).

The plaintiffs' principal challenge to the inspection process is that it lacked a provision for obtaining precompliance review. The amended ordinance addresses that defect, and perhaps cures it. However, inexplicably, and demonstrating the wisdom of the voluntary-cessation proviso, the defendant noted in its brief that "[t]he City, to protect itself, has amended the PMC to add a pre-inspection review procedure. Obviously, if the City is correct that such a review is not required, the City will remove that provision." Def. Br. at 15 n.2. By making that litigation position expressly known, the defendant cannot overcome the "formidable burden" imposed on it. The City is not entitled to summary judgment on the plaintiffs' Fourth Amendment claim because of mootness.

## 2. Facial Invalidity Claim

The plaintiffs contend the former version of the ordinance — to which the City threatens to revert — is unconstitutional on its face. The Supreme Court explained that "[a] facial challenge is an attack on the statute itself," and while more exacting standards apply, such challenges "are not categorically barred or especially disfavored." *Patel*, 135 S. Ct. at 2449.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Am. IV. Unreasonable searches are unlawful, and, as a general rule, a warrantless search of a home or business is presumptively unreasonable. *Kentucky v. King*, 563 U.S. 452, 459 (2011). There are exceptions.

One exception to the warrant requirement focuses on a search "conducted for a 'special need' other than to investigate criminal wrongdoing.'" *Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 280 (6th Cir. 2018). "Also included in this exception are administrative searches designed to assure compliance with building codes, including codes designed to prevent buildings from becoming dangerous to tenants or neighbors." *Benjamin*, 2019 WL 545129 at *2 (citing *Patel*, 135 S. Ct. at 2452; *Camara v. Mun. Court*, 387 U.S. 523, 534 (1967)). Under this administrative-search exception to the warrant requirement, some procedural demands are relaxed. But before a municipal official may "conduct[] a warrantless search of a building or property on the ground that it has become dangerous, the government must give the owner 'an opportunity to obtain precompliance review before a neutral decisionmaker.'" *Ibid.* (citing *Patel*, 135 S. Ct. at 2452). "The administrative scheme must give the property owner the chance to challenge a warrantless search request before being sanctioned for refusing entry." *Ibid.* (citing *Liberty Coins*, 880 F.3d at 280). Otherwise, without the opportunity for precompliance review, there exists an "intolerable

risk" that searches authorized by an ordinance will exceed statutory limits or be used as pretext to harass individuals. *Patel*, 135 S. Ct. at 2452-53.

By any reading of *Patel* and the cases that follow it, the former version of the City's inspection ordinance comes up short. The City nevertheless argues that the PMC's inspection scheme is materially distinguishable from the ordinance in *Patel* because administrative searches here are non-discretionary and do not carry criminal penalties. However, nothing in *Patel* supports the City's narrow reading. The Supreme Court in no way limited its holding to those situations where the decision to inspect is discretionary and not mandated by some triggering event under the ordinance. *See generally Patel*, 135 S. Ct. at 2452-54. And although the ordinances in *Patel* and *Liberty Coins* allowed for the possibility of criminal penalties, neither the Supreme Court nor the Sixth Circuit have held that the precompliance review requirement applies only in these contexts. *Cf. Camara*, 387 U.S. at 533 (noting that "broad statutory safeguards are no substitute for individualized review, *particularly* when those safeguards may only be invoked at the risk of a criminal penalty.") (emphasis added).

An exception to the warrant and precompliance review requirements exists "for searches conducted of businesses in '[closely regulated]' industries since they are already subject to extensive government oversight and accordingly possess reduced privacy interests." *Liberty Coins*, 880 F.3d at 280. The City believes that exception ought to apply here. It would be remarkable to apply this exception to searches of rental properties, particularly residential properties, since "the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Payton v. New York*, 445 U.S. 573, 585-86 (1980) (quoting *United States v. United States District Court*, 407 U.S. 297, 313 (1972)).

"Nevertheless, even warrantless searches of businesses in closely regulated industries must meet three criteria, as delineated by the Supreme Court in *New York v. Burger*, in order to be deemed reasonable, and thus constitutional, under the Fourth Amendment: (1) 'there must be a "substantial" government interest that informs the regulatory scheme pursuant to which the inspection is made'; (2) 'the warrantless inspections must be necessary to further the regulatory scheme'; and (3) 'the statute's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant.'" *Liberty Coins*, 880 F.3d at 281 (quoting *Burger*, 482 U.S. 691, 702-03 (1987)). The Supreme Court has cautioned that this is a "narrow exception" and has identified only four closely regulated industries that satisfy these criteria: (1) liquor sales; (2) firearms dealing; (3) mining; and (4) running an automobile junkyard. *Patel*, 135 S. Ct at 2454-55 (citations omitted). "The Sixth Circuit has categorized pharmacies and the sand and gravel industry as closely regulated." *Liberty Coins*, 880 F.3d at 282 (citations omitted).

The City has not explained how its ordinance meets any of these criteria and has not otherwise developed this argument. Rental properties do not fall within the set of industries identified by the Supreme Court and the Sixth Circuit as closely regulated. Instead, they are comparable to hotels, which do not benefit from the exception simply because they are subject to regulation. *See Patel*, 135 S. Ct. at 2455 ("To classify hotels as pervasively regulated would permit what has always been a narrow exception to swallow the rule."); *Baker v. City of Portsmouth*, No. 14-5l2, 2015 WL 5822659, at *5 (S.D. Ohio Oct. 1, 2015) (concluding that "the rental of residential properties is not a closely regulated industry").

The record before the Court indicates that the City's former ordinance did not provide for any precompliance review and that inspections were never performed under a warrant. The former

version of the ordinance is unconstitutional on its face. Because the plaintiffs' facial challenge survives summary judgment, the Court need not reach the as-applied challenge. *Liberty Coins*, 880 F.3d at 291.

Moreover, the undisputed facts demonstrate that the plaintiffs are entitled to a partial judgment declaring the former version of the ordinance unconstitutional. The Court discussed the posture of this case with the parties at oral argument, and therefore it will enter judgment accordingly. *See* Fed. R. Civ. P. 56(f)(1) ("After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant . . . ."). Because the ordinance has been amended to include opportunities for landlords to obtain precompliance reviews before yielding to an inspection, there is no need to grant injunctive relief. *See Students for a Conservative Am. v. Greenwood*, 378 F.3d 1129, 1130-31 (9th Cir. 2004) ("[R]evisions of the election code have mooted the plaintiffs' requests that the district court . . . enjoin application of the challenged code provisions in future elections.").

### 3. Damages

Despite the unconstitutionality of former section 9-1-35, the City contends that the plaintiffs cannot recover damages as part of their claim under section 1983 because they have not created a material fact question on the issue of causation. The plaintiffs' theory is that they are entitled to compensation under theories of unjust enrichment and restitution because the City obtained inspection fees and blight fines pursuant to an unlawful law. That argument is a non-starter.

The complaint does not plead claims of unjust enrichment or restitution. Instead, the plaintiffs allege that "assumpsit" entitles them to recovery, which is not a standalone cause of action, as noted above. The plaintiffs therefore cannot recover under these quasi-contractual

theories because they are not properly before the Court.  *See Carter v. Ford Motor Co.*, 561 F.3d 562, 568 (6th Cir. 2009); *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 787-88 (6th Cir. 2005).

To recover damages under section 1983, the plaintiffs must bring out facts that establish a causal connection between the constitutional violation and the damages they seek.  *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007) ("Traditional tort concepts of causation inform the causation inquiry on a § 1983 claim.") (citing *McKinley v. City of Mansfield*, 404 F.3d 418, 438 (6th Cir. 2005)).  The plaintiffs believe that they are entitled to all inspection fees and blight fines they paid the defendant before the PMC was amended because these payments were compelled over the plaintiffs' objections to unlawful searches.  For that to make sense, the plaintiffs would need to show that they in fact refused inspection or at least point to some evidence that would allow that inference.  They instead exclusively rely on their unsupported assertions that they "refused to permit inspection and/or re-inspections of their properties and were punished for doing so through the City's issuance of tickets."  Plfs.' Br. at 3. That is not enough.

No city official has testified on this record that he or she ever has inspected rental properties when the owner or occupant refused entry.  The plaintiffs attached as evidence eight blight violation notices, which say nothing about the inspections themselves, and the City's case activity listings, which similarly lack any information about refusing inspection.  In fact, these printouts suggest that at least some of the inspections were initiated by a tenant or owner.  *See* Case Activity Listing, ECF No. 14-3, PageID.142 ("Complaint Inspection"); Case Activity Listing, ECF No. 14-4, PageID.149 ("Called Inspection").  It is an elementary principle of Fourth Amendment jurisprudence that consent obviates the need for a warrant.  *Schneckloth v. Bustamonte*, 412 U.S.

218, 219 (1973). The only evidence before the Court is just as consistent with innocent behavior — that the defendant performed inspections with consent — as it is with wrongful behavior. *See also* Ibrahim Dep. at 36, ECF No. 14-8, PageID.268 (testifying that 60 to 80 percent of inspections are initiated by tenant complaints). The plaintiffs have not made an affirmative showing to defeat the defendant's motion as to recovery of the inspection fees.

There is no set of facts that would support recovery of the blight fines. As noted earlier, a municipality has the authority to regulate land use and set occupancy requirements under its police power, *15192 Thirteen Mile Road*, 626 F. Supp. at 823, and the plaintiffs have not contested the City's power to institute blight violations where a landlord rents residential property without a certificate of compliance. The underlying requirements that rental properties possess certificates of compliance and failure to do so may result in a blight violation are lawful and their validity in no way depends upon what preinspection process was afforded to owners. Indeed, the *Patel* Court made clear that "nothing in [their] opinion call[ed] into question those parts of § 41.49 that require hotel operators to maintain guest registries containing certain information." *Id.* at 2454. Even if the plaintiffs could show that they did not consent to inspection, they cannot hide behind the Fourth Amendment to avoid compliance.

The plaintiffs cite several cases that apparently stand for the proposition that a party may seek repayment of monies paid under an illegal statute. However, as the defendant correctly notes, those cases all involved refunding payments where the underlying tax or assessment scheme was deemed unlawful. *See McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Dep't of Bus. Reg. of Fla.*, 496 U.S. 18, 22 (1990) ("[T]he Due Process Clause requires the State to afford taxpayers a meaningful opportunity to secure postpayment relief for taxes already paid pursuant to a tax scheme ultimately found unconstitutional."); *Carpenter v. Shaw*, 280 U.S. 363, 369 (1930)

("[A] denial by a state court of a recovery of taxes exacted in violation of the laws or Constitution of the United States by compulsion is itself in contravention of the Fourteenth Amendment."); *Theatre Control Corp. v. City of Detroit*, 370 Mich. 382, 388, 121 N.W.2d 828, 830 (1963) (allowing plaintiffs to maintain an action to recover payments made pursuant to unlawful water assessment); *Beachlawn Bldg. Corp. v. City of St. Clair Shores*, 370 Mich. 128, 133, 121 N.W.2d 427, 430 (1963) ("[P]laintiff's payments were involuntary, made under the compulsion or duress of being denied the right to continue its business unless it paid the unlawful exactions," which were "in excess of the cost of issuing the license and regulating the business to which they applied."); *AFT Mich. v. State of Mich.*, 315 Mich. App. 602, 893 N.W.2d 90 (2016) (directing return of subject funds to plaintiffs who had contributed three percent of their salaries to state retirement system under unconstitutional state law).

Here the lack of precompliance review affected only the propriety of the inspection ordinance; if the plaintiffs elected to operate without a certificate of compliance and were fined for doing so, they cannot be heard to cry foul. It is of no consequence that the administrative hearing is characterized as "strict-liability," since the plaintiffs have no right under the law to avoid inspection and maintain a rental property without a certificate. And again, there is nothing in the record that suggests the plaintiffs in fact objected to inspection in the first place or that the properties were up to code.

The plaintiffs are not entitled to recover blight fines, inspection fees, or other damages. The defendant is entitled to partial summary judgment on the damage claim in Count II of the complaint.

### III. Conclusion

The pre-amendment version of section 9-1-35(b) of the City's PMC is unconstitutional under the Fourth Amendment because it authorized warrantless, nonconsensual inspections of rental properties without allowing the landlord an opportunity to seek a precompliance review. The plaintiffs are entitled to a declaratory judgment to that effect. The subsequent amendment of that ordinance does render the issue moot, but it does obviate the need for injunctive relief. The plaintiffs have not brought forth evidence creating a fact question on any other aspect of their complaint.

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment (ECF No. 14) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the plaintiffs are **GRANTED** partial summary judgment under Federal Rule of civil Procedure 56(f)(1) declaring pre-amendment version of section 9-1-35(b) of the City of Detroit's Property Maintenance Code unconstitutional.

It is further **ORDERED** that Counts I, III, IV, V, VI, VII, and part of Count II of the complaint seeking damages are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the motion for class certification (ECF No. 18) is **DISMISSED as moot**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:   February 27, 2019

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on February 27, 2019.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI